1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NILA DUNCAN, et al, | ) 1:04-CV-5908  DLB |
| | ) |
| | ) |
| Plaintiff(s), | ) ORDER DENYING DEFENDANTS' MOTION |
| | ) TO DISMISS, GRANTING IN-PART AND |
| v. | ) DENYING IN-PART MOTION FOR |
| | ) SUMMARY JUDGMENT |
| | ) |
| UNITED STATES OF AMERICA, et al. | ) |
| | ) |
| Defendant(s). | ) |
| _____ | ) |

On October 14, 2002, plaintiff Nila Duncan and her husband, Royce Duncan,

(collectively "Plaintiffs") were walking on a paved portion of Moro Rock Trail located within

Sequoia National Park when Nila Duncan stepped backwards into a depression in the pavement

and broke her ankle.

On June 29, 2004, Plaintiffs filed a Complaint that named the United States and Does 1-

100 as defendants and sought damages pursuant to the Federal Tort Claims Act (FTCA), 28

U.S.C. 1346(b), for personal injury, negligent infliction of emotional distress, and loss of

consortium.

On September 14, 2004, the United States of America and Does 1-100 ("Defendants")

1

filed their Answer in which they denied Plaintiffs' allegations and alleged the following

defenses:

1.      Failure to state a claim upon which relief can be granted;

2.      Sovereign immunity based on the discretionary function exception pursuant to 28 U.S.C.

        § 2680(a);

3.      The injuries/damages alleged by Plaintiffs are the result of Plaintiffs' negligence and

        failure to exercise due care, thus barring Plaintiffs from recovery.  Alternatively, any

        recovery that Plaintiffs would otherwise be entitled to must be reduced on a pro rata basis

        based on comparative fault;

4.      The United States exercised due care and due diligence in all matters complained of and

        no action or failure to act on the part of the United States was the proximate cause of any

        injury/damage suffered by Plaintiffs;

5.      The injuries/damages Plaintiffs complain of arose out of conditions that were open and

        obvious and as such the United States owed no duty to Plaintiffs to warn of such

        conditions;

6.      The injuries/damages Plaintiffs complain of were caused in whole or part by the

        negligence of third parties for which the United States is not responsible;

7.      The injuries/damages Plaintiffs allege are barred or reduced by the doctrine of assumption

        of risk;

8.      Plaintiffs' recovery, if any, must be reduced to the extent they failed to mitigate their

        alleged damages;

9.      Plaintiffs' damages, if any, are limited to the amounts set forth in their administrative

        claims.  28 U.S.C. § 2675(b);

10.     If the United States is found liable for non-economic damages, such finding is governed

by California Civil Code sections 1431-1431.5, and must be apportioned according to the

responsibility of all tortfeasors, named or unnamed;

11.     Plaintiffs cannot recover any separate amount for attorney fees. 28 U.S.C. § 2678.  Any

attorney fees are capped by the FTCA and must be paid out of any judgment awarded.  28

U.S.C. § 2678;

12.     The unnamed Doe defendants are not proper parties in this action.

On February 22, 2006, Defendants filed a Motion to Dismiss or in the alternative Motion

for Summary Judgment.  The motion seeks summary judgment on the issue of whether the

discretionary function exception applies in this case.  In the alternative, Defendants assert that

Nila Duncan assumed the risk of injury and/or  the trail defect on which Nila Duncan fell was

trivial and not a dangerous condition pursuant to California Government Code sections 830(a)

and 830.2.

The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. §

636(c) and on February 28, 2006, United States District Judge Oliver W. Wanger entered an

Order reassigning the case to the United States Magistrate Judge Dennis L. Beck for all purposes

including trial and entry of judgement.

On March 13, 2006, Plaintiffs filed an Opposition arguing that Defendants failed to

follow a mandatory duty pursuant to NPS's Management Policy Handbook and that maintenance

is a safety responsibility not susceptible to policy analysis.  Plaintiffs also contend that once the

decision was made to pave the trail, Defendants became obligated to exercise due care in

maintaining the trail.  Plaintiffs rely primarily on paragraph 1 of § 9.1.4.1 of the Management

Policy Handbook; Whisnant v. United States, 400 F.3d 1177 (9th Cir. 2005);  Valdez v. United

States, 56 F.3d 1177 (9th Cir. 1995); and <u>ARA Leisure Services v. United States</u>, 831 F.2d 193 (9th Cir. 1987).  In addition, Plaintiffs assert that the defect is not trivial, citing <u>Urisino v. Big Boy Restaurants of America</u>, (1987) 192 Cal.App. 3d 394, 398.  Finally, Plaintiffs argue that the primary assumption of risk doctrine is inapplicable, citing <u>Knight v. Jewett</u> (1992) 3 Cal 4th 296.

On March 24, 2006, Defendants filed a Reply, rejecting Plaintiffs' claims and re-arguing their asserted defenses of assumption of risk and trivial defect.  Defendants contend that the facts of this case fall squarely in line with the discretionary function exception.  Defendants assert that trail maintenance requires the exercise of discretion, citing portions of the <u>Management Policies</u>.  Defendants also claim discretionary decisions regarding trail maintenance are clearly based on competing public policy considerations– to avoid unnecessary proliferation of signs, to appropriately use Park Service funds, while at the same time promoting park visitor safety.  In addition, Defendants reject Plaintiffs' contention that once the NPS employed discretion by paving the trail, that Defendants are obligated to exercise due care in maintaining the trail and as a result the discretionary function no longer applies.  Defendants explain that factual issues concerning negligence are irrelevant to the threshold jurisdictional issue, citing <u>Rosebush v. United States</u>, 119 F.3d 438, 442 (6th Cir. 1997).  Moreover, Defendants assert that Plaintiffs misapplied <u>Whisnant</u>, <u>ARA Leisure Services</u>, and <u>Valdez</u>.

## UNDISPUTED FACTS

The following facts are derived from Plaintiffs' Response to Defendants' Alleged Undisputed Material Facts and Defendants' Separate Statement of Undisputed Material Facts.

1.    On October 14, 2002, Nila Duncan broke her left ankle while hiking on Moro Rock Trail located in Sequoia National Park.

2.    Moro Rock Trail includes both natural rock and concrete sections and contains a section

of stairs and ramps approximately 800 feet in length.

3.  The National Park Service's express intent with regard to Moro Rock Trail is to blend the trail in with the rock.  The National Park Service also intends the trail to be "harmonize[ed] with the natural scene to the highest degree possible."

4.  Moro Rock Trail was designed to closely follow the terrain of its surrounding area, which is primarily the granite dome of Moro Rock.

5.  The National Park Service's <u>Management Policies</u> (2001) focus on the management of the National Park System, and encompass a broad range of issues, including the posting of signs.  These policies provide that park management should exercise their discretion when ensuring that signs minimally intrude upon the historic or natural setting.  The policies also provide that signs must be held to the minimum number, size, and wording in order to serve their function and that they should be placed where they do not intrude on visitors' enjoyment of the park.

6.  The location where signs are to be placed is governed by the National Park Service policy which is located in the "Sign Manual."  The National Park Service's intent is for park managers to use the "Sign Manual" as a guide in the design and placement of all vehicular and pedestrian control signage.  The "Sign Manual" specifically provides that park managers are responsible for determining whether or not a sign is necessary or appropriate in a specific location.  This decision is within the professional judgment of the park managers, however they must consider the National Park Service's policy to minimally intrude upon the historic and natural settings of the Park.

7.  The National Park Service employees participate in the policy decisions concerning the Park's management.

8.      When examining the photograph of the depression/divot, Sequoia National Park's Law Enforcement Specialist/Tort Claims Officer Robert Wilson testified that he would not have filed out a maintenance request to repair the condition.

9.      Plaintiff Nila Duncan was not wearing hiking shoes the day she fell.  In fact, her shoes were slip-on "flats" with a rubber sole and no ankle cover or support whatsoever.

10.     Plaintiff Nila Duncan testified that prior to her fall, she had lived in the mountains for five years and based on that experience she knew that while walking on mountain trails a person should "watch for snakes and holes."

**DISPUTED FACTS**

The following facts are derived from Plaintiffs' Response to Defendants' Alleged Undisputed Material Facts[1] and Defendants' Separate Statement of Undisputed Material Facts.

1.      Plaintiffs dispute any suggestion that the paved portion of the trail has not been maintained periodically.

2.      Plaintiffs agree that National Park Service decisions concerning the design and construction of Moro Rock Trail are not governed by mandatory statutes.  However, Plaintiffs dispute that the same is true with regard to *maintenance* of Moro Rock Trail.

3.      Plaintiffs disagree that the Management Policies provide park management with discretion over trail surfacing and maintenance.

///

///

[1] Although Plaintiffs assert that additional facts are in dispute, upon review of the record, it does not appear that a disagreement exists in all the instances Plaintiffs allege.  The disputed facts listed above reflect those which *may* be considered to be in dispute.  However, as item 1 indicates, Plaintiffs deny "any suggestion" that the paved portion of the trail has not been maintained periodically.  Plaintiffs are referring to Defendants' statements that the basic route of Moro Rock Trail has remained unchanged since 1931.  This is an example of how the "disputed facts" upon closer look may not ultimately be in dispute.

6

**Summary Judgement Standard**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed.R.Civ.P. 56(e)).  As to the specific facts offered by the nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the light most favorable to the nonmoving party.  Id. at 630-31.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

amendments).

 In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

255, and all reasonable inferences that may be drawn from the facts placed before the court must

be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out

of the air, and it is the opposing party's obligation to produce a factual predicate from which the

inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.

Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

 Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**Motion to Dismiss Standard**

Federal Rule of Civil Procedure 8(a) provides:

> A pleading which sets forth a claim for relief, whether an original
> claim, counterclaim, cross-claim, or third party claim, shall contain
> (1) a short and plain statement of the grounds upon which the
> court's jurisdiction depends, unless the court already has
> jurisdiction and the claim needs no new grounds of jurisdiction to
> support it, (2) a short and plain statement of the claim showing that
> the pleader is entitled to relief, and (3) a demand for judgment for
> the relief the pleader seeks.  Relief in the alternative or of several

different types may be demanded.

Fed.R.Civ.P. 8(a).  Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly.  Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).

In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), Parks School of Business, Inc. v. Symington, 51 F.3d 1480 1484 (9th Cir. 1995).  A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

**Federal Tort Claims Act**

Provided that the claimant has met the jurisdictional prerequisite of filing a timely administrative claim, the Federal Tort Claims Act (FTCA) provides that:

> [T]he district courts . . .  shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).  The FTCA also provides that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like

circumstances."  28 U.S.C. § 2674.  The FTCA contains a limited waiver of sovereign

immunity, making the federal government liable for certain torts of federal employees acting

within the scope of their employment.  United States v. Orleans, 425 U.S. 807, 814 (1976).  The

FTCA includes officers and employees of "any federal agency" but expressly excludes "any

contractor with the United States."  28 U.S.C. § 2671.

However, a suit may not be instituted against the United States under the FTCA unless

the claim is first presented to the appropriate federal agency and one of the following conditions

is met:  the claim is finally denied, or six months have passed without a final resolution having

been made.  28 U.S.C. § 2675(a).  The claim presentation requirement is a jurisdictional

prerequisite to bringing suit and must be affirmatively alleged in the complaint.  Gillispie v.

Civiletti, 629 F.2d 637, 640 (9th Cir. 1980).  The plaintiff in a federal action always bears the

burden of establishing subject matter jurisdiction; the court presumes lack of jurisdiction until

plaintiff proves otherwise.  Kokkonen v. Guardian Life Inc. Co. of America, 511 U.S. 375

(1994).  A motion to dismiss for lack of subject matter jurisdiction may be asserted under Federal

Rule of Civil Procedure 12(b)(1).

Plaintiffs assert that on or about December 24, 2003, Nila Duncan filed a claim with the

Superintendent at Sequoia and King's Canyon National Parks, Department of the Interior,

National Park Service.  Plaintiffs also contend that on December 24, 2003, Royce Duncan filed a

claim with the Superintendent at Sequoia and King's Canyon National Parks, Department of the

Interior, National Park Service.  According to Plaintiffs, they have yet to receive a response

regarding both claims.

///

///

**Discretionary Function**

The discretionary function exemption to the FTCA, 28 U.S.C. § 2680(a), provides in

relevant part:

> The provisions of this Chapter and Section 1346(b) of this title
> shall not apply to–(a) Any claim based upon an act or omission of
> an employee of the Government, exercising due care, in the execution
> of a statute or regulation, whether or not such statute or regulation
> be valid, or based upon the exercise or performance or the failure to
> exercise or perform a discretionary function or duty on the part of a
> federal agency or an employee of the Government, whether or not the
> discretion involved be abused.

The Supreme Court of the United States, in Berkovitz v. United States, 486 U.S. 531

(1988), established a two-prong test to determine whether or not the discretionary function bars

suit against the Government:

First, a court must determine whether the action is a matter of choice for the actor.  "The

discretionary function will not apply when a federal statute, regulation, or policy specifically

prescribes a course of action for an employee to follow.  In this event, the employee has no

rightful option but to adhere to the directive."  Id. at 536.

Second, if the conduct is found to involve an element of judgment, a court must consider

whether the discretionary function exception was designed to shield that type of judgment.  By

creating the discretionary function exception, it was Congress' desire to "prevent judicial

'second-guessing' of the legislature and administrative decisions grounded in social, economic,

and political policy through medium of action in tort.  [Id. at 537, quoting United States v.Varig

Airlines, 467 U.S. 797 (1984), at 814.]   The exception, properly construed, therefore protects

only governmental actions and decisions based on considerations of public policy.  [See Dalehite

v. United States, 346 U.S. 15 (1953), at 36.]   In sum, the discretionary function exception

insulates the Government from liability if the action challenged in the case involves permissible exercise of policy judgment."  Berkovitz, 486 U.S., at 537.

In Valdez v. United States, 56  F3d 1177 (9th Cir. 1995), the court applied the Berkovitz test and held that the government was immune from suit when a park visitor left a trail, climbed up the side of a waterfall, fell, and as a result was rendered a quadriplegic.  There, the plaintiff argued that the district court erred in determining that the NPS's conduct was discretionary based on the NPS's Loss Control Management Guidelines and Management Policies which he argued set forth mandatory regulations of which NPS employees were required to follow regarding safety measures.  The Court disagreed, stating that the policy guidelines were merely policy goals and the *means* by which NPS  satisfied these goals were discretionary.  The plaintiff argued alternatively that the challenged conduct was not a choice between competing policy considerations, rather it was a safety management concern.  Plaintiff cited Summers v. United States, 905 F.2d 1212 (9th Cir. 1990), where the Court found that the NPS's failure to warn park visitors of the danger of stepping on hot coals on a public beach was not the type of judgement "grounded in social, economic, or political policy" that Congress intended to insulate.  Id. at 1215.  The Valdez Court rejected this interpretation of Summers, stating, "Our conclusion in *Summers* was based on the fact that there was 'no evidence ... that NPS's failure to post warnings ... was the result of a decision reflecting the competing considerations of the Service's sign policy.'  *Id.*"  Valdez v. United States, supra, at 1180.  The Court continued, "The related decision regarding which natural hazards should be brought to the attention of the public through pamphlets or brochures similarly implicates public policy concerns.  Faced with limited resources and unlimited natural hazards, the NPS must make a public policy determination of which dangers are obvious and which dangers merit the special focus of a warning brochure or

pamphlet.  In addition, too many warning brochures and pamphlets would inevitably reduce the impact of the individual warnings on the public."  Id. at 1180.

In ARA Leisure Services v. United States, 831 F.2d 193 (9th Cir. 1987), a tour bus went off a road in a national park.  The injured passengers and the survivors of deceased passengers brought a suit against the government arguing that the NPS negligently designed, constructed, and maintained the road.  The Court of Appeals held that the NPS's decision to construct the road without guardrails fell within the discretionary function exception, however, the NPS's failure to maintain the road in a safe condition was not protected by the exception.  The Court believed that the failure to maintain the road was not a decision grounded in social, economic, or political policies.  Rather, the Court concluded that the government's failure to maintain the road fell was ordinary garden-variety negligence.  Id. at 196.

In Whisnant v. United States, 400 F.3d 1177 (9th Cir. 2005), an employee of a government contractor brought a suit pursuant to the FTCA against the United States, seeking to recover for personal injuries resulting from the alleged negligent operation of a commissary on a navel base where toxic mold was allowed to grow in the meat department.  There, the Court re-emphasized the need to distinguish between design and implementation.  "[W]e have generally held that *design* of a course of government action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not.  Second ... matters of scientific and professional judgment– particularly judgements concerning safety– are rarely considered to be susceptible to social, economic, or political policy."  Id. at 1181.  The Court also discussed Indian Towing Co. v. United States, 350 U.S. 61 (1955), where the Court held that "the government could not escape liability for negligent maintenance of a lighthouse:

The Coast Guard need not undertake the lighthouse service.  But once it

exercised its discretion to operate a light ..., it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning.  If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the [Federal] Tort Claims Act.  Id. at 69, 76 S.Ct.122.

As we have summarized: 'The decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not.... [S]afety measures, once undertaken, cannot be shortchanged in the name of policy.'  Bear Medicine, 241 F.3d at 1215, 1216-17."  Id. at 1182.

**Warning Signs**

Defendants contend that National Park Service decisions regarding when and where to place warning signs along Moro Rock Trail are discretionary, satisfying the first prong of the Berkovitz test.

Defendants assert that the Park Service's Organic Act, 16 U.S.C. § 1, gives the NPS broad discretionary power in the regulation of national parks.  The Organic Act provides in pertinent part:

"[The NPS] [s]hall promote and regulate the use of the . . . national parks . . . by such means and measures as conform to the fundamental purpose of said parks,  . . . which purpose is to conserve the scenery and the natural historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. §1."  Doc. 29-2, at

Defendants also cite the National Park Service Management Policies (2001),  a 12. set of policy directions for Park Service managers that applies to a wide variety of park issues, including signage.  The Management Policies state that signs should "'minimally intrude upon

the natural or historic setting (UMF 7).'"  Doc. 29-2, at 12.  According to Defendants, the Ninth

Circuit has determined that the <u>Management Policies</u> leave issues involving signage up to NPS

discretion.  Furthermore, the means by which public safety concerns should be addressed is "'left

to the discretion of superintendents and other decision-makers at the park-level, who must work

within the limits of funding and staffing.'"  Doc. 29-2, at 12.

"The National Park Service Sign Manual Provides:

> 'The decision to utilize a particular sign at a particular location requires the
> professional judgment of the park manager-drawing upon available guides,
> resources, and traffic safety engineering expertise– and considering a variety
> of other factors, such as the appearance of the road as whole and its relationship
> to the natural and/or historical environment through which it passes.  It is
> important in this regard, too, that such decisions bear in mind the long
> standing National Park policy to minimally intrude upon the natural
> or historic setting of National Park System areas, and to avoid an
> unnecessary proliferation of signs, while striving to ensure for the safety of
> park visitors.'  (UMF No.10)."  Doc. 29-2, at 13.

Furthermore, Defendants argue that the decision whether or not to place signs on Moro

Rock Trail is based on public policy considerations, thereby satisfying the second prong of the

<u>Berkovitz</u> analysis.  In support of this, Defendants' refer to <u>Kahan v. U.S.</u>, 73 F.Supp.2d (1999),

a case that involved park visitors bringing a negligence action against NPS stemming from burn

injuries sustained from lava heated ocean water.  There, the United States Magistrate Judge held

that park officials decisions regarding whether to erect signs, warnings, and barriers were

protected by the discretionary function exception.

Defendants' reference to <u>Kahan</u> is a reiteration of the contents of the <u>NPS Sign Manual</u>

set forth above.  Based on this, Defendants argue that the NPS balanced the "competing policy

concerns in determining whether and how to warn of potential hazards along Moro Rock Trail. Accordingly, the discretionary function applies and precludes liability against the government for plaintiffs' injuries." Doc. 29-2, at 14.  Furthermore, Defendants cite Childers v. United States, 40 F.3d 973 (9th Cir.1994), asserting that NPS decisions concerning safety measures require the consideration of numerous public policy concerns, such as cost, feasibility, and aesthetics. Defendants also maintain the Childers Court found that the procedures under which NPS employees utilize to determine whether to post signs and close trails require significant judgment and discretion.

Defendants also make reference to Valdez v. United States, 56 F.3d 1177 (9th Cir. 1995), a case described above involving a trail in a National Park where the Court found that the discretionary function exception applied.  In addition, Defendants cite Fahl v. United States, 792 F.Supp. 80 (D. Ariz. 1992), a case which held that the decisions whether and where to put warning signs, lights, and guardrails were a matter of choice left to the Park Service pursuant to policy mandate 16 U.S.C. §1.[2]

Defendants are correct that decisions regarding whether to place warning signs and if so the number, size, placement, etc. are a discretionary function since they require the balancing of competing policy considerations.  Insofar as Plaintiffs' claim is based upon a failure to warn, Defendant's motion for summary ajudication is GRANTED.

**Trail Maintenance**

Defendant, United States, denies it negligently maintained Moro Rock Trail.  Defendant maintains that trail maintenance involves the exercise of discretion and liability for failure to

---

[2] Defendants also cite additional authority.  See Doc. 29-2 at 15-16.

maintain the trail should be barred by the discretionary function exception.  Defendant contends that the NPS's Management Policies discussed above contain policies which "explicitly provide Park Service officials with discretion over the maintenance of its hiking trails.

These policies specifically state:

> '[A]ll *trails* and walks will be carefully situated, designed and managed to . . .
> allow for a satisfying park experience [and] protect park resources . . . .
> Heavily used trails and walks in developed areas *may be surfaced as*
> *necessary* for visitor safety, accessibility for persons with impaired
> mobility, resources protection, or erosion control.  Surface materials
> should be carefully selected, taking into account factors such as the
> purpose and location of a trail or walk, and the potential for erosion
> and other environmental impacts.'
> UMF 8, Management Policies  § 9.2.3 (emphasis added)"  Doc. 29-2, at 17.

Defendants add that the policies above must "further be balanced by Moro Rock Trail's express intent to be (1) 'harmonize[d] with the natural scene to the highest degree possible' and (2) blended in with the granite rock comprising Moro Rock itself.  (UMF 4)"  Doc. 29-2, at 17.

"The Management Policies further provide:

> 'Park visitors must assume a substantial degree of risk and responsibility for
> their own safety when visiting areas that are managed as natural, cultural, or
> recreational environments.'  Further, the Management Policies do not impose
> park-specific visitor safety prescriptions.  The *means by which public concerns*
> *are to be addressed 'is left to the discretion of superintendents and other*
> *decision-makers at the park level, who must work within the limits of funding*
> *and staffing.'*  'Some forms of visitor safeguards - such as fences, railings, and
> paved walking surfaces- appropriate or practicable in a national park setting.'
> (Emphasis added)  (UMF 9)"  Doc. 29-2, at 17.

Finally, Defendants argue that a conscious decision is not required in terms of placement

of signs or maintenance.  They assert that all that is necessary is that the "agency's program allows room for independent policy judgments.  <u>Kennewick Irrigation District v. United States</u>, 880 F.2d 1018 (9th Cir. 1989)."  Doc. 29-2, at 19.

In response, Plaintiffs contend that the NPS exercised its discretion years ago when it decided to pave Moro Rock Trail.  "Once the decision is made to exercise discretion, Defendant is obligated to use due care in maintaining the object of the discretionary decision . . . Once paved, it was incumbent upon Defendant to maintain the paved surface of the Trail utilizing reasonable inspection procedures and reasonable maintenance procedures for the safety of Park Visitors."  Doc. 32-2, at 12.

Plaintiffs argue that the discretionary function does not apply here because the Defendants failed to follow their mandatory duty of trail maintenance inspections.  In support of this, Plaintiffs cite the NPS <u>Management Policies</u> handbook, specifically paragraph 1 of §9.1.4.1 which states:

> "There is a maintenance responsibility and cost for every asset that is administered by the United Park Service.  A regular, periodic inventory and condition assessment of park assets will be performed to identify deficiencies and to ensure the cost-effective maintenance of all facilities."

Plaintiffs assert that maintenance is a safety responsibility and not susceptible to policy analysis.  The primary 9th Circuit case Plaintiffs' rely on is <u>ARA Leisure Services v. United States</u>, 851 F.2d 193, 195 (9th Cir. 1987) where the court found that the decision to build a road without guardrails was shielded under the discretionary function exception, however the failure to maintain the road was safety responsibility.  Plaintiffs contrast this with <u>Valdez v. United States,</u> 56  F3d 1177 (9th Cir. 1995), where the court held that the discretionary function

exception applied when a park visitor left a trail and climbed up the side of a waterfall and fell.

Plaintiffs also point out that in the three years prior Nila Duncan's accident, Sequoia National Park did not conduct any formal inspections of Moro Rock Trail.  In fact, SNP does not have written guidelines for employees to follow with respect to paved trail inspections or guidelines indicating what circumstances required paved walkways to be repaired.  Instead, SNP has a verbal guideline to keep paved areas "safe and sane."  According to the originator of the "safe and sane" concept, if a hazardous condition were reported on a paved trail, it would most likely be corrected with a cold patch as quickly as possible.  In this case, Mr. Moffit instructed Fred Havrilla to patch the trail sometime after the accident.  At the time the assignment was made, Mr. Moffit had not inspected the trail personally and he did not give Mr. Havrilla any specific instructions regarding how to do the patchwork.  Fred Harvilla testified that if there was a hole 2-1/1 inches deep and large enough to fit a size 12 shoe into it, he would have filled the hole with cold patch.  Doc. 32-2, at 4-5.

Finally, Plaintiffs take issue with Defendant's statement that no asphalt patchwork had been performed on Moro Rock Trail three years prior to the incident and that the only work done had been handrails and a bench replacement.  Depositions indicated that prior to the President's visit to the Park in 2001, cold patch was used to repair a hole on the trail approximately ankle deep.  Plaintiffs also indicate that cold patch material is inexpensive and employees may use it without seeking a supervisor's approval.  Doc. 32-2, at 6.

Plaintiffs are correct the decision to pave the Moro Rock trial, the design of the paved and unpaved portions of the path and the selection of the material to be used are all discretionary, but the maintenance of the paved trail in a safe condition once paved is not a discretionary function within the meaning of the exception.  The undisputed evidence is that any employee who

observed a defect in the pavement on the path which he/she considered a hazard could have applied a cold patch or asked for one to be applied.  The evidence is also undisputed that a cold patch is easy to apply and inexpensive.  The decision whether a defect in the trial is unsafe and therefore needs to be patched is not one which requires the balancing of competing policy concerns but rather one which requires the application of common sense.

Defendant argues that the Park includes many miles of trails throughout thousands of acres of wilderness and that in an effort to reasonably allocate the Park's resources a policy of annual inspections has been implemented.  Defendant argues that the adoption of an annual trail inspection policy is a discretionary function.  Indeed, it appears that the adoption of an annual trail inspection policy is an example of a discretionary function, The path in question is not an infrequently or seasonally traveled wilderness trail but rather a trail leading from a parking lot adjacent to the Park's main highway to a major Park attraction.  Evidence is undisputed that Park employees frequently travel the path.

Defendant's motions to dismiss and for summary judgement as to the allegation of negligent failure to maintain the path in a safe condition is DENIED.

**Assumption of Risk**

_____There are two variants of doctrine assumption of risk, primary and secondary.  <u>Knight v. Jewett</u>, 3 Cal.4th 296 (1992).  "Secondary assumption of risk [is] where a defendant breaches a duty of care owed to the plaintiff but the plaintiff nevertheless knowingly encounters the risk created by the breach.  Secondary assumption of risk is not a bar to recovery, but requires the application of comparative fault principles."  <u>Id.</u> at 314-315.  In contrast, primary assumption of risk arises where  "by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm

that caused the injury– the doctrine continues to operate to as a complete bar to plaintiff's recovery." Id. at 315.  The Court emphasized that in determining whether or not assumption of risk applies to a given situation, the nature of the sport the plaintiff engaged in is highly relevant in determining the duty of care owed by the defendant.  Id.

Defendant argue that the doctrine of primary assumption of risk bars Plaintiffs' recovery. "The doctrine of assumption of risk is an exception to the general rule of liability.  'Primary assumption of risk arises where a plaintiff voluntarily participates in an activity or sports involving certain inherent risks; primary assumption of risk does bar recovery because no duty of care is owed to such risks.'  Connelly v. Mammoth Mountain Ski Area, 39 Cal.App.4th 8, 11 (1995) (affirming summary judgment, holding ski area operator had no duty to protect skier from striking tower)."  Doc. 29-2, at 21.

A key factor in determining whether the doctrine of primary assumption of the risk applies is the nature of the activity.

> With respect to the nature of the activity, the doctrine of primary assumption of the risk applies "where 'conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport [or activity] itself.' [Citation.]" (Saville, supra, 133 Cal.App.4th at p. 867, 36 Cal.Rptr.3d 515, quoting Knight, supra, 3 Cal.4th at p. 315, 11 Cal.Rptr.2d 2, 834 P.2d 696.) "In these types of activities, the integral conditions of the sport or the inherent risks of careless conduct by others render the possibility of injury obvious, and negate the duty of care usually owed by the defendant for those particular risks of harm. [Citation.] A duty imposed in those situations would significantly change the very purpose or  nature of the activity. 'The overriding consideration in the application of primary assumption of risk is to avoid imposing a duty which might chill vigorous participation in the implicated activity and thereby alter its fundamental nature.' [Citations.]" (Saville, supra, 133 Cal.App.4th at p. 868, 36 Cal.Rptr.3d 515.) Simply put, and contrary to plaintiff's view, primary assumption of the risk is not limited to sports but applies to any physical activity that involves an element of risk or danger as an integral part of the activity. (Knight, at p. 315, 11 Cal.Rptr.2d 2, 834 P.2d 696.)

Rostai v Neste Enterprises, 138 Cal. App 4th 326 (2006).

Plaintiffs contend that primary assumption of risk is inapplicable because the typical application of the doctrine has been in cases involving recreational sports where there are known inherent risks and that no case exists expanding this defense to instances where plaintiffs are walking on paved surfaces.  Doc. 32-2, at 16-18.

Even if the Court were find, as Defendant contends, that "[t]here is an inherent risk of tripping, slipping or otherwise falling while hiking up a trail toward a granite mountaintop within a National Park" the risk at issue here is stepping into a depression while walking on a paved pathway.  The extension of the doctrine of primary assumption of the risk to the activity of walking on a paved trail is unwarranted and Defendant's Motion to Dismiss or for Summary Judgement on that ground is DENIED.

**Trivial Defect Defense**

The trivial defect defense developed through case law and has historically been applied in cases involving public entities.  Ursino v. Big Boy Restaurants of America, 192 Cal.App.3d 394, 396.  What constitutes a trivial defect is defined in California Government Code 830(a):

> "Dangerous condition" means a condition of property that creates
> a substantial (as distinguished from a minor, trivial or insignificant)
> risk of injury when such property or adjacent property is used with due
> care in a manner in which it is reasonably foreseeable that it will be used.

In determining whether or not a defect is "trivial" courts have looked to Fielder v. City of Glendale, 71 Cal.App.3d 719 (1977), where the Court of Appeal rejected the "tape measure test" and instead considered in addition to the depth or size of the depression "whether there existed aggravating factors, such as lighting, debris, or a history of other similar injuries ..."  Ursino, at 397.

Defendants assert that the trail defect was trivial and not a dangerous condition.  In essence, there was nothing that the Park service was required to do to prevent Plaintiff from falling while hiking Moro Rock Trail without closing the trail itself.

The trivial defect defense is found in California Government Code sections 830 and 830.2, which provides:

> A condition is not a dangerous condition . . . if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used.

The primary case that Defendants' rely on is Ursino v. Big Boy Restaurants of America, 192 Cal.App.3d 394, 398 (1987).  In Ursino, a woman suffered injuries after tripping and falling while walking on a sidewalk located on the premises of a restaurant.  The trial court found that the restaurant, being a non-governmental defendant, may assert the trivial defect defense.  Defendants point out that the Ursino Court stated, "'[I]t is impossible to maintain 'heavily traveled surfaces in a perfect condition and that minor defects such as differences in elevation are bound to occur is spite of the exercise of reasonable care by the party having the duty of maintaining the area involved.'" Id. at 397 (quoting Graves v. Roman, 113 Cal.App.2d 584, 586-587 (1952)).  As such, Defendants' argue that the defect complained of in this case is minor, trivial or insignificant thereby warranting summary judgment on this independent ground.

Plaintiffs respond by noting that in almost 20 years Ursino has not been relied on in another California appellate court decision.  According to Plaintiffs this suggests that Ursino is

nothing more than a common law and common-sense principle to take all the facts and circumstances into consideration when determining whether a defect is dangerous or trivial. Plaintiffs urge the Court to find that the divot is not trivial and that it was reasonable for users of the Trail to expect the grade to be even and to be able to take in the scenery without having to walk "penguin-like with their heads down watching each step taken."  Doc. 32-2, at 16.

Contrary to Plaintiffs argument <u>Ursino</u> is not an aberration nor is its application of the trivial defect doctrine mere *dicta*[3].  The Trivial defect doctrine is alive and well as illustrated by <u>Caloroso v. Hathaway,</u> 122 Cal. App. 4th 922, (2004) and a number of unpublished California Court of Appeals decisions upholding the trail court's application of the doctrine on grant of summary judgement in favor of private property owners.  The Court in <u>Caloroso</u> explained the trivial defect doctrine

> . . . It is well established that a property owner is not liable for damages caused by a minor, trivial or insignificant defect in property.  (Whiting v. City of National City (1937) 9 Cal.2d 163, 69 P.2d 990.)  Courts have referred to this simple principle as the "trivial defect defense," although it is not an affirmative defense but rather an aspect of duty that plaintiff must plead and prove.  The "trivial defect defense" is available to private, nongovernmental landowners. (Ursino v. Big Boy Restaurants (1987) 192 Cal.App.3d 394, 398-399, 237 Cal.Rptr. 413.)  As the Ursino court stated, "persons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition."  (Ibid.) The question presented on this appeal is not whether Hathaway established a complete defense, but whether plaintiffs showed there is a triable issue as to whether there was a dangerous condition of the walkway that Hathaway had a duty to repair.
>
> The decision whether the defect is dangerous as a matter of law does not rest solely on the size of the crack in the walkway, since a tape measure alone cannot be used to determine whether the defect was trivial.  [fn. omitted]  A court

---

[3] The <u>Ursino</u> Court wrote "Plaintiff asserts that the "trivial defect" defense, which is determined by a court as a matter of law, is applicable only to governmental entities for the reason that the rule is grounded in the requirement of notice to the property owner of the existence of the defect.

That argument was specifically rejected in *Graves v. Roman, supra*, 113 Cal.App.2d 584, where, after citing numerous cases where the difference in elevation between adjoining sections of sidewalk varied from one-fourth of an inch to one inch, the court concluded that the defense goes not only to the issue of notice but also to the critical issue of *negligence in the maintenance of the sidewalk*."  <u>Ursino</u> *id.* at 413

should decide whether a defect may be dangerous only after considering all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would suggest. (Fielder v. City of Glendale, supra, 71 Cal.App.3d at p. 734, 139 Cal.Rptr. 876.)  Aside from the size of the defect, the court should consider whether the walkway had any broken pieces or jagged edges and other conditions of the walkway surrounding the defect, such as whether there was debris, grease or water concealing the defect, as well as whether the accident occurred at night in an unlighted area or some other condition obstructed a pedestrian's view of the defect.

Caloroso, *id*. at 927.

While the California cases on trivial defects deal almost exclusively with sidewalks it is clear that the same principles apply to other walkways.  The size of the defect is but one of the factors to be considered in making the determination whether there existed a dangerous condition which the property owner is under a duty to repair.  In considering the exhibits, points and authorities and arguments in support of and in opposition to the instant motion it does not appear that the parties have taken the opportunity to fully explicate all the factors necessary to this determination.  Accordingly the court is unable to determine as a matter of law whether the defect at issue was a dangerous condition in the setting of the National Park.  Accordingly Defendant's motion for summary judgement is DENIED.  However, the parties should consider whether this issue should be bifurcated for trial and/or whether, given the opportunity for further briefing and argument, it may be appropriate for summary judgement.

IT IS SO ORDERED.


Dated:   **June 7, 2006**          _____**/s/ Dennis L. Beck**_____

3b142a                          UNITED STATES MAGISTRATE JUDGE

25